# EXHIBIT J

| THE STATE OF TEXAS | § |
| --- | --- |
| | § |
| COUNTY OF HARRIS | § |

# DECLARATION OF SUSAN HURTA

1. My name is Susan Hurta. I am more than eighteen years of age and am competent in all respects to make this Declaration. The facts stated herein are within my personal knowledge and are true and correct.

2. I worked for Houston Independent District as a Senior Special Education Manager for nine years. Before that, I held different positions at HISD for 27 years before retiring in 2019.

3. In 2018, Ms. Nixon applied for an open senior management position. I was on the interview committee for the position. I recommended Ms. Nixon for the position to Dr. Verrett. I had evidence that she was the most qualified and that she deserved to be considered. He rejected the idea of Ms. Nixon because he had an idea of who he wanted to hire. Dr. Verrett told me he was trying to get diversity on the team. Ms. Nixon is African American.

4. In my years of experience at HISD, it was not common practice to pass over someone who was highly qualified like Ms. Nixon for a senior management position. Dr. Verrett never gave Ms. Nixon an opportunity to interview. Typically, we followed HISD protocol and would interview 3 people for an open position, if good candidates were available. Dr. Verrett did not follow HISD protocol when he hired Ms. Tatarskaja.

5. The committee was called to Dr. Verrett's office for a quick interview the day after Ms. Tatarskaja submitted an application at Dr. Verrett's request. The interview committee did not have HISD's interview rubric during Ms. Tatarskaja's interview. The committee was called back a few weeks later to fill in those forms. Even though she interviewed well and got good ratings based on the interview, I did not think that Ms. Tatarskaja was qualified for the position. My thoughts were confirmed when I mentored Ms. Tatarskaja all year and watched her struggle with high profile and delicate cases.

6. Dr. Verrett would say often say things like, "we need a man" on a certain team or "we have too many African American women in Special Ed". When he received grievances against him, Dr. Verrett said "you're not a good boss if you don't have any grievances." He saw grievances against him as something to be proud of and he had many.

7. After a 1 on 1 meeting with Verrett, Ms. Nixon told me she felt she was being discriminated against. When I spoke to Dr. Verrett about Ms. Nixon's discrimination concern, he dismissed the topic as a non-issue.

Doc ID: 2f59d5d853c7d801037312bcd90cb7e39252dcb9

8. I knew Ms. Nixon was the most qualified for the position because during Ms. Nixon's time as my team lead, we oversaw a program with 4 locations throughout the community. This program had its own designated school number, with responsibilities that aligned with work specifically within schools. We registered students, addressed behavior and transportation issues of special education students in all 4 locations. We also managed 15 transition coaches. Ms. Nixon was my right-hand person, we worked hard, and we were a great team.

9. Together we organized transition programs for special education students with the Houston Food Bank in collaboration with nonprofit named HEART, we organized trainings for special education students through Project Search TX Children's Health plan building, DOW Chemical, and another at Houston Community College Midtown from the ground up. These programs were geared towards students who met their graduation requirements and helped students become independent members of society.

10. Ms. Nixon was so well qualified that I suggested to our previous superintendent, Sowmya Kumar for Special Education, that Ms. Nixon be a transitioned into a manager position, this happened two years before Dr. Verrett was superintendent.

11. Dr. Verrett recommended a Lamar HS position to Ms. Nixon. I was surprised to hear it because he told me that in their private meeting Ms. Nixon did not know what she wanted to do. It made me uncomfortable because she didn't get any information about the salary before the transfer. It was the fastest transfer I had seen in my career at HISD.

12. I knew Ms. Nixon was on intermittent FMLA, I assumed Dr. Verrett also knew that. He stated that we had a major trust issue because of this. He accused me of purposefully lying to him which made my relationship with Dr. Verrett strained until I retired.

13. After Nixon left, the year was hard for me in my position because she was so essential and helpful in her job as my Team Lead. We built systems that were working well for Transition Services in HISD. For the remainder of the year, I felt that I was constantly in the mode of training new managers for the work we did. Ms. Nixon and I worked together like a well oiled machine. Ms. Tatarskaja, her lead and my new lead were eager to learn, but a great deal of momentum was lost with these new players.

I declare under penalty of perjury under the laws of the state of Texas that the facts I have provided on this form and any attachments are true.

Subscribed and sworn to before me this 28th day of February 2022.

_____
Susan Hurta



# Audit Trail

| | |
|---|---|
| **TITLE** | Nixon - S. Hurta Declaration (2) (02.28.22).pdf |
| **FILE NAME** | Nixon%20-%20S.%20...2802.28.22%29.pdf |
| **DOCUMENT ID** | 2f59d5d853c7d801037312bcd90cb7e39252dcb9 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

This document was requested from app.clio.com

## Document History

**SENT** — 03 / 01 / 2022, 04:56:28 UTC
Sent for signature to Susan Hurta (sujhurta@gmail.com) from intern3@kennardlaw.com
IP: 72.26.20.191

**VIEWED** — 03 / 01 / 2022, 05:03:00 UTC
Viewed by Susan Hurta (sujhurta@gmail.com)
IP: 45.31.114.96

**SIGNED** — 03 / 01 / 2022, 05:11:16 UTC
Signed by Susan Hurta (sujhurta@gmail.com)
IP: 45.31.114.96

**COMPLETED** — 03 / 01 / 2022, 05:11:16 UTC
The document has been completed.

Powered by HelloSign