# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DANIELLE NICOLE NIXON, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | CIVIL ACTION NO. 4:20-cv-01699 |
| v. | § | |
| | § | |
| HOUSTON INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| DEFENDANT. | § | |

## DEFENDANT'S OBJECTIONS AND MOTION TO STRIKE CERTAIN SUMMARY JUDGMENT EVIDENCE

Defendant Houston Independent School District ("HISD" or "Defendant") files its Objections to and Motion to Strike Certain Summary Judgment Evidence that is attached to Plaintiff Danielle Nicole Nixon's ("Nixon" or "Plaintiff") Response to Nixon's Motion for Summary Judgment ("Response") [Dkt. 37] and would respectfully show the Court as follows:

Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[1] In the Fifth Circuit, it is well settled that "the

---

[1] FED. R. CIV. P. 56(c)(2); FED. R. CIV. P. 56, Committee Notes on Rules—2010 Amendment ("The objection functions much as an objection at trial, adjusted for the pretrial setting.")

**DEFENDANT'S OBJECTIONS AND MOTION TO STRIKE**
**CERTAIN SUMMARY JUDGMENT EVIDENCE**                                                   **PAGE 1**

admissibility of summary judgment evidence is subject to the same rules of admissibility applicable to a trial."[2] The burden is on the proponent, here Nixon, to show that the material is admissible as presented or to explain the admissible form that is anticipated.[3] Nixon's Response and its evidence fail to meet this burden. HISD objects to and moves to strike the exhibits, or sections of exhibits, offered in support of Nixon's Response because they constitute inadmissible evidence. HISD further moves to strike all references to this inadmissible evidence in Nixon's Response.

### A. HISD's Objections to the Audio Recording and Transcript of the Alleged Conversation (Exhibit A, Exhibit 2)

In support of her Response, Nixon submits a transcript[4] of an alleged conversation between her and Verrett discussing her dissatisfaction about not being considered for the Senior Manager position in the Special Education Department (the Recording").[5] The Recording, in both audio and transcribed form, is inadmissible because it is not properly authenticated.[6] To properly authenticate an audio recording and transcript as evidence, the proponent must establish: 1) the operator's competency; 2) fidelity of the recording equipment; 3) absence of material alterations; and 4) identification of relevant sounds or voices.[7]

---

[2] *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285 (5th Cir. 2004) (quoting *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1024 (5th Cir. 1995)).
[3] FED. R. CIV. P. 56, Committee Notes on Rules—2010 Amendment.
[4] Nixon also produced an audio recording of the alleged transcript.
[5] *See* Response, p. 11, n. 2.
[6] *See* FED. R. EVID. 801 and 802.
[7] FED. R. CIV. P. 901 (a).

Here, Nixon fails to provide any information on the type of phone or application used, its reliability, or her competency to operate it.[8] Indeed, Nixon testified that she recorded the conversation on her cell phone but soon after the Recording, she got a new phone.[9] She downloaded the recording to a flash drive, which she no longer has and later uploaded the recording to a cloud file.[10] Nixon also fails to provide any information on whether she deleted portions of the Recording or altered it in any way. In fact, Nixon admits, and Verrett agrees, that the Recording does not capture the beginning and ending of the conversation,[11] that there are words that are incorrect in the transcript,[12] and that there are several portions of the Recording that are inaudible.[13] Moreover, Nixon's Declaration does not state that the Recording is a true and accurate reflection of the conversation with Verrett.[14] Ultimately, because Nixon has failed to properly authenticate the Recording through her testimony, HISD objects to and moves to strike Exhibit 2 within Exhibit A of Nixon's Response.

---

[8] *See Badaiki v. Cameron International Corp.,* 2021 WL 6010536 at *4 (S.D. Tex. Sept. 8, 2021) (finding that an audio recording and transcript were not properly authenticated and thus not included as competent summary judgment evidence because plaintiff failed to provide any information on the device used, its reliability, and whether the recording was altered); *see also Hooge v. Union Pac. R.R. Co.,* No. 18-CV-1112, 2020 WL 3067219, at *4 (M.D. La. June 9, 2020) (excluding transcript of audio recording on summary judgment as not authenticated because proponent failed to attest to or provide evidence of how the transcript was preserved, the software used, or who prepared the transcript, even though proponent did attest that she made the recordings with her cell phone and the transcripts were accurate).
[9] *See* Defendant's MSJ, p. 15, n. 81.
[10] *Id.*
[11] *See* Defendant's MSJ, Ex. A *Nixon Dep.* 239:8-12, 280:16-281:11; Ex. B, *Verrett Dep.* 127:12-128:10, 146:6-147:13.
[12] *See e.g.,* Defendant's MSJ, Ex. A *Nixon Dep.* 265: 14-266:7.
[13] *See e.g.,* Defendant's MSJ, Ex. A *Nixon Dep.* 239:15-24; 248:6-249:1; 254:18-25.
[14] *See* Response, p. 11, n. 2, Exhibit K.

**B. HISD's Objection to Exhibits not produced during Discovery within Nixon's Declaration (Exhibits 4-6, 9-10) and as part of Nixon's Response (Exhibits C, M, N, L)**

Federal Rule of Civil Procedure 37(c) disallows the use of evidence in a trial or to support a motion if the evidence was not produced in discovery.[15] In determining whether the failure to comply with Rule 26 is harmless, the Court considers, "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose."[16]

Nixon has not explained her failure to disclose the evidence at issue. Exhibit 4 to Nixon's declaration consists of emails detailing Nixon's job duties, administrative expectations, text messages, and activity calendars while performing her job as an AP.[17] Exhibit 5 and Exhibit 6 show Nixon's complaints regarding her office and phone - conditions that Nixon now uses to support her retaliation and hostile work environment claims.[18] Exhibit 9 is a complete email string to Coshunda Fanning discussing Nixon's separation and refusal to sign the AP contract.[19] Exhibit 10 is the Texas Education Agency's petition for sanctions against Nixon's teaching certificate.[20] Additionally, Exhibit C to Nixon's Response is a second Charge of

---

[15] *See* FED. R. CIV. P. 37 (c)(1).
[16] *Texas A&M Research Foundation v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).
[17] *See* Response, p. 8, Ex. K, Ex. 4.
[18] *See* Response, p. 8, Ex. K, Exs. 5 & 6.
[19] *See* Response, p. 8, Ex. K, Ex. 9.
[20] *See* Response, p. 8, Ex. K, Ex. 10.

Discrimination filed by Nixon, Exhibit M is an email regarding Nixon's request to delay her transfer to Lamar, and Exhibits N and L provide detailed information regarding Nixon's son's therapy and schedules that support Nixon's FMLA claims.[21]

Each of these exhibits were requested by HISD during discovery and should have been produced as part of Nixon's production.[22] Nixon provides no explanation or justification for not producing nearly all the evidence she relies on in her Response. It is evident that these withheld exhibits are significant since it is all the evidence Nixon presents to support her claims in her Response. Moreover, Nixon has deprived HISD the ability to fully investigate her claims related to these documents and she should not be rewarded for such concealment. Ultimately, allowing Nixon to rely on these exhibits that she willingly chose to not produce during discovery is highly prejudicial and should be stricken.[23]

### C. HISD's Objections to Nixon's Declaration (Exhibit A).

Declarations "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[24] Speculation, unsupported allegations of fact, ultimate or conclusory facts, and legal conclusions

---

[21] *See* Response, p. 8, Exs. C, M, N, L.
[22] Ex. 1, Plaintiff's Responses to Defendant's First Requests for Production Nos. 6, 14, 16, 25, 37, 39, 41, 46.
[23] *See Barners v. BTN, Inc.,* 555 Fed. Appx. 281, 286 (5th Cir. 2014) (affirming district court's exclusion of documents not produced in discovery into evidence).
[24] FED. R. CIV. P. 56(c).

are not sufficient summary judgment evidence.[25] A court therefore must not consider parts of an affidavit that fail to meet the standards of Federal Rule of Civil Procedure 56 in determining summary judgment.[26]

### D. Objections to Nixon's Declaration Based on Hearsay

Nixon's Declaration is replete with hearsay. Many of the conclusory allegations, speculations, and assertions provided in Nixon's Declaration are attested as "true and correct" by Nixon but have no basis within the Motion for Summary Judgment's record and is not competent summary judgement evidence, including:

1. *"Dr. Verrett had detailed to me and [sic] that he had circumvented the District's job posting and interviewing procedures in order to install a person of his desired race. Ms. Hurta verified his motives and said she had told him this would be upsetting for me."* (Nixon Dec., Ex. K, ¶ 5).[27]

2. *"Ms. Graves said she was embarrassed for the conditions of the office."* (Nixon Dec., Ex. K, ¶ 12).

3. *"I received a call from Dr. Verrett, in which he told me to stop asking about my salary and job offer and that I was embarrassing him."* (Nixon Dec., Ex. K, ¶ 14).

4. *"On September 17, 2018, Vache Hall provided me the salary she had calculated for the AP position and informed that I did not have the ability*

---

[25] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *see also Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment.").

[26] *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (explaining "unsubstantiated assertions are not competent summary judgment evidence").

[27] Notably, this statement and others also contradict Nixon's deposition testimony. A nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony Doe ex rel. Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 386 (5th Cir. 2000) (if a party who "has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.").

> *to negotiate this amount any further and that this would be a take it or leave it situation and it was a reduction in yearly compensation."* (Nixon Dec., Ex. K, ¶ 15).

5. *"I was called by Dr. Verrett during this time and discussed me reporting to OSES and that I was to report to his assistant, Gregory Hudson the following day and would no longer be reporting to Susan Hurta."* (Nixon Dec., Ex. K, ¶ 16).

6. *"I reached out to Susan Hurta to see if she had any positions available that I may be able to transfer to, she said she had been ordered by Dr. Verrett to close all openings in OSES."* (Nixon Dec., Ex. K, ¶ 17).

7. *I had a discussion with Ryan Wheeler, a colleague that took my position in OSES. He said he had received a formal offer letter, rejected the offered salary and negotiated a higher compensation."* (Nixon Dec., Ex. K, ¶ 18).

8. *Kimbal Urrutia…reached out to Chief of Human Resources, Julia Dimmit regarding this matter. In their discussion he informed Ms. Dimmit of the discrimination complaint and that this seemed related. Ms. Dimmit was aware of the complaint and said that I was "sour grapes" and would have been [sic] taken accountability for my actions. She also relayed that as Dr. Verrett was black himself, so [sic] he could not commit racial or sexual discrimination."* (Nixon Dec., Ex. K, ¶ 20).

**Objection:** HISD objects to these statements because they are hearsay, factual conclusions, and speculation. These statements are made by third parties, many of whom do not know about this case, are out of court statements offered to prove the truth of the matter asserted[28]—that Nixon appears to offer to show she experienced retaliation, FMLA interference, and a hostile work environment, ultimately leading to her constructive discharge.[29]

---

[28] *See* FED. R. EVID. 801.
[29] *See* Response, pp. 10, 14, 15, 26, 27.

Nixon has also failed to show that she has personal knowledge about whether Verrett indeed "circumvented" any of interviewing guidelines to hire Tatarskaja.[30] Nixon does not know whether all OSES openings were closed.[31] Nixon's declaration is devoid of any personal knowledge that Ryan Wheeler indeed negotiated and received a higher salary. Nixon also has no personal knowledge of whether Graves was embarrassed by Nixon's office or Verrett was embarrassed by her requests for salary information. Lastly, Nixon has no knowledge of whether Graves would have rescinded Nixon's AP contract for her "making a stink."[32]

Lastly, Nixon makes no argument that these statements are excluded by the rule against hearsay. Indeed, these statements were not made by a party to this lawsuit under Federal Rules of Evidence 801(d)(2)(a). There is also no indication that each statement was made by a declarant who was authorized by HISD to make a statement under Federal Rules of Evidence 801(d)(2)(c). Finally, Nixon fails to argue that each statement directly relates to each declarant's employment duties or that the statements made are inconsistent with HISD's position as required under Federal Rules of Evidence 801(d)(2)(d). Therefore, Nixon has not laid an adequate

---

[30] To the contrary, Nixon admits in her deposition that she does not know what HISD Board policy Verrett allegedly "broke" in interviewing Tatarskaja. *See* Defendant's MSJ, Ex. A, *Nixon Dep.* 123:7-124:15.
[31] Nixon admitted that she chose not to look for and apply to any SPED positions because she had heard that they had been closed, but admits that there were open positions at the time. *See* Defendant's MSJ, Ex. A, *Nixon Dep.* 198: 2-13.
[32] *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge.").

foundation to bring these statements into a hearsay exception or exclusion, and therefore, such statements are inadmissible and should be stricken.[33]

### E. Objections to Hurta's Declaration Based on Hearsay (Exhibit J)

1. *"Verrett would say often say [sic] things like, 'we need a man' on a certain team, or 'we have too many African American women in Special Ed.' When he received grievances against him, Dr. Verrett said 'you are not a good boss if you don't have any grievances.'"* (Hurta Dec., Ex. J, ¶ 6).

HISD objects to this statement in Exhibit J as hearsay because it is offered solely to prove and advance Nixon's Title VII gender discrimination and retaliation claims against HISD.[34] Moreover, no hearsay exception applies to this out-of-court statement that would allow it to be admissible summary judgment evidence.[35] Hurta's statement is also not relevant to Nixon's allegations. Hurta does not specify that Verrett said this statement to Nixon in reference to her applying for the Senior Manager position, nor does Hurta state that Verrett was even referencing the Senior Manager position when the alleged statement was made.[36] Thus, the Court should sustain HISD's hearsay and relevance objections to Exhibit J and strike it such evidence from the summary judgment record.

---

[33] *See Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the extent not based on hearsay or other information excludable at trial.").
[34] *See* FED. R. EVID. 801; *see also* Response, pp. 10, 20-21.
[35] *See* Motion, p. 8.
[36] *See* Response, p. 10.

WHEREFORE, HISD requests that the Court grant HISD's Motion in its entirety,[37] sustain its objections, strike Plaintiff Danielle Nicole Nixon's inadmissible evidence, and grant HISD all other and further relief to which it may be justly entitled.

Dated: March 8, 2022

    /s/ Ruthie N. White
Ruthie N. White
State Bar of Texas No. 00798580
Federal I.D. No. 21052
SPENCER FANE LLP
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
Telephone: (713) 552-1234
Facsimile: (713) 963-0859
Email: rwhite@spencerfane.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT**

OF COUNSEL:
Rachael I. Thomson
Texas Bar No. 24118555
S.D. Tex. No. 3601042
SPENCER FANE LLP
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
Telephone: (713) 552-1234
Facsimile: (713) 963-0859
Email: rthomson@spencerfane.com

---

[37] In the event that the Court determines all evidence proposed by Plaintiff should not be stricken, an alternative order is also filed with this Motion.

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2022 the foregoing Motion was filed with the clerk of the Court of the United States District Court for the Southern District of Texas using the CM/ECF system pursuant to the Court's electronic filing requirements, which constitutes service of the filed documents on all parties of record.

*/s/ Ruthie N. White*
Ruthie N. White