THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **DANIELLE NICOLE NIXON,** | § § § | |
| **PLAINTIFF,** | § § | **CIVIL ACTION NO. 4:20-cv-01699** |
| v. | § § | |
| **HOUSTON INDEPENDENT SCHOOL DISTRICT,** | § § § § | |
| **DEFENDANT.** | § | |

# DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR COMPLETE SUMMARY JUDGMENT

Ruthie N. White
State Bar of Texas No. 00798580
S.D. Tex. No. 21052
SPENCER FANE LLP
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
Telephone: (713) 552-1234
Facsimile: (713) 963-0859
Email: rwhite@spencerfane.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT**

**OF COUNSEL:**
Rachael I. Thomson
Texas Bar No. 24118555
S.D. Tex. No. 3601042
SPENCER FANE LLP
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
Telephone: (713) 552-1234
Facsimile: (713) 963-0859
Email: rthomson@spencerfane.com

# TABLE OF CONTENTS

I. SUMMARY OF THE ARGUMENT ................................................................................. 1

II. ARGUMENT AND AUTHORITIES ................................................................................. 1

    A. Nixon's Newly Withheld Evidence Reinforces Her Failure to Exhaust her Title VII Gender Discrimination, Retaliation and Hostile Work Environment Claims ................ 1

    B. HISD is Entitled to Summary Judgment Even if Nixon's Title VII Gender, Retaliation and Hostile Work Environment Claims are Timely ................................... 3

    C. Nixon Presents No Evidence to Rebut HISD's Legitimate Non-Discriminatory Non-Retaliatory Reason for Failure to Promote Her ............................................................ 6

    D. Nixon Correctly Stipulates that Her Title VI and § 1983 Claims should be Dismissed ........................................................................................................................ 9

    E. Nixon attempts to Manufacture a Fact Issue regarding her FMLA Interference and Retaliation Claim using Inadmissible Evidence Based on Hearsay and Conjecture ..................................................................................................................... 10

III. CONCLUSION ................................................................................................................. 12

## I. SUMMARY OF THE ARGUMENT

Plaintiff Danielle Nixon's ("Nixon") Response [Dkt. No. 37] lacks *competent evidence* that she experienced discrimination, retaliation, and a hostile work environment after she was passed over for a promotion to Senior Manager or that she was constructively discharged. Nixon has had ample opportunity to develop her case since filing this lawsuit over two years ago. And yet, her Response presents arguments largely based on unsupported assertions, rampant speculation, and otherwise newly produced and inadmissible evidence.[1] It appears Nixon has tried to compensate for her lack of evidence by presenting a smokescreen of suppositions and speculation in an apparent attempt to create a cloud of irrelevant "facts" to distract the Court from the salient issue: whether Nixon has demonstrated a "conflict in substantial evidence"[2] or genuine issue of material fact to survive summary judgment. She clearly did not. Summary judgment should be granted.

## II. ARGUMENT AND AUTHORITIES

**A. Nixon's Newly Withheld Evidence Reinforces Her Failure to Exhaust her Title VII Gender Discrimination, Retaliation and Hostile Work Environment Claims**

Defendant has proffered admissible summary judgment evidence that Nixon failed to exhaust her Title VII gender discrimination, retaliation and hostile work

---

[1] Much of the "evidence" Nixon relies on is inadmissible for the reasons set forth in HISD's Objections and Motion to Strike Certain Summary Judgment Evidence filed simultaneously with this Reply.
[2] *See Jurach v. Safety Vision, LLC*, 642 Fed. Appx. 313, 322 (5th Cir. 2016) (affirming summary judgment on retaliation claim because no "conflict in substantial evidence").

environment claims.[3] Nixon filed her first Charge of Discrimination on April 9, 2019 ("First Charge") and this is the Charge that Nixon testified to in her deposition and was also included in Defendant's Motion for Complete Summary Judgment ("Defendant MSJ").[4] In Nixon's Response[5] and *for the first time in this lawsuit,* Nixon produces a new and separate Second Charge of Discrimination filed on December 8, 2019 ("Second Charge").[6] Nixon wholly failed to produce this Second Charge despite Defendant's written discovery requests.[7] Nixon cannot now use a charge she concealed in discovery as a sword to avoid summary judgment, and a shield to defend her meritless gender discrimination, retaliation, and hostile work environment claims.[8]

Moreover, Nixon's Second Charge *reinforces* her failure to exhaust her Title VII gender discrimination, retaliation and hostile work environment claims. The claims within Nixon's Second Charge are time-barred because she filed her Second Charge more than 300 days from the date of her resignation.[9] Nixon's Second Charge

---

[3] Defendant's MSJ, (Dkt. 32), pp. 9-11, nn. 51-52, 58-61.
[4] *Id.*
[5] Notably, Nixon's Response totals more than 20 pages in violation of Local Rule 6. Nixon did not seek leave of court to file her Response in excess of the page limit. Therefore, arguably, any argument beyond the 20-page limit should not be considered.
[6] *See* Response, p. 18-19, Ex. C. Nixon's Second Charge is not an amendment to the First Charge, but a separate Charge.
[7] *See* Ex.1, Plaintiff's Responses to Defendant's First Requests for Production No. 14. In response to Request for Production No. 14, Plaintiff simply references Bates numbers which encompass Plaintiff's entire production. *Id.*
[8] *See* FED. R. CIV. P. 37 (c)(1). Documents not produced during the discovery period are not to be used at a hearing, trial, or as summary judgment evidence.
[9] *See Stith v. Perot Sys. Corp.,* 122 Fed. Appx. 115, 116 (5th Cir. 2005) (dismissing plaintiff's race and sex discrimination claims when charge was not filed with the EEOC within the statutorily mandated 300 days from the time of the alleged discrimination). Surprisingly, in her Response, Nixon ignores the fact that the claims are barred and still argues she "checked the box" for "race," "sex," "disability" and "retaliation" and vaguely argues that Defendant should have had reasonably expected a hostile work environment claim from the bare-bone facts within the Second Charge. *See* Response, p. 18-19. Notably, Nixon's Second Charge solely discusses the TEA petition and sanctions filed against her

was filed on December 8, 2018 – *409 days* after Nixon submitted her resignation and 3*95 days* after her last day at HISD.[10] In sum, regardless of whether the Court considers Nixon's First or Second Charge, Nixon failed to exhaust her Title VII gender discrimination, retaliation, and hostile work environment claims. Summary judgment on these claims is warranted.

B. **HISD is Entitled to Summary Judgment Even if Nixon's Title VII Gender, Retaliation and Hostile Work Environment Claims are Timely**

Should the Court determine that the claims within Nixon's Second Charge are still viable, there is still no genuine issue of material fact as it relates to her Title VII gender, retaliation and hostile work environment claims.[11] In her Response and for the first time in this lawsuit, Nixon claims she was demoted - yet she presents no admissible summary judgement evidence to support her demotion allegation.[12] Again, without any admissible summary judgment evidence, Nixon states that *Verrett* transferred her into the AP position at Lamar ("AP Position") after Nixon complained to Susan Hurta ("Hurta") about not receiving the Senior Manager position, and Hurta

---

and does not discuss any facts that would reasonably put HISD on notice of any facts that support her gender discrimination, retaliation, or hostile work environment claim. *Id.*
[10] Defendant's MSJ, p. 8, nn. 44-45; Response, p. 18, Exhibit C;
[11] *See* Defendant's MSJ, pp. 11-13. Nixon's gender discrimination claim is meritless. Verrett did indeed hire a female to fill the Senior Manager position, Tatarskaja, and Tatarskaja was initially recommended by female Senior Manager Richelle Brooks. Moreover, a majority of the interview panel were females. *See* Defendant's MSJ, p. 4; p.5, n. 24.
[12] *See* Response, p. 22-23. It is also important to note that Exhibits K and J were signed on March 1, 2022, after Plaintiff's Response was filed and later stricken from the record. [Dkt. 35]. *Id.* Exhibits K and J were signed March 1, 2022 despite purporting to be signed on February 28, 2022, the date the Response was due. *Id.* Thus, Exhibits K and J should not be admitted as proper competent summary judgment evidence because it was submitted in bad faith and passed the response deadline. Fed. R. Civ. P. 56 (h).

relayed Nixon's complaint to Verrett.[13] There is no summary judgment evidence that Verrett had any role in deciding to hire Nixon as an AP; nor did he have any input or knowledge about her AP salary.[14] Verrett merely forwarded the resume Nixon provided him to Graves for Graves' consideration and endorsed Nixon as a potential candidate for the job.[15] In her deposition, Nixon testified she felt coerced to submit her resume; in her Response, she now claims Verrett "ordered" her to apply for the AP Position.[16] Indeed, the undisputed summary judgment evidence establishes Nixon forwarded her resume to be considered for the AP Position, voluntarily interviewed for the AP Position, voluntarily discussed the details of the AP Position with Graves, voluntarily accepted the AP Position, and voluntarily carried out her job duties as an AP for two months.[17] Nixon repeats her allegations that she was constructively discharged because her FMLA leave was revoked.[18]

---

[13] Response, p. 22-23.
[14] *See* Defendant's MSJ, p. 5-6, nn. 6, 31, Exs. C, E, ¶ 13.
[15] *See* Defendant's MSJ, p. 5-7.
[16] Defendant's MSJ, p. 5-7, nn. 28; Response, p. 12. *See S.W.S. Erectors, Inc. v. Infax, Inc.,* 72 F.3d 489, 495 (5th Cir.1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.").
[17] Defendant's MSJ, pp. 5-7, 11-12. Without any admissible summary judgement evidence, Nixon expresses her subjective belief that Verrett wanted her to take the AP position to "get her out of the picture" and somehow was responsible for delaying her AP salary information until after her former position was no longer available. *See* Response, p. 23-24. *See Likens v. Hartford Life & Accident Ins. Co.,* 688 F.3d 197, 202 (5th Cir. 2012) ("Although all justifiable inference[s] must be drawn in favor of the non-movant, the non-movant still cannot defeat summary judgment with speculation, improbable inferences, or unsubstantiated assertions." (citations omitted)). Lastly, she falsely alleges she was told to accept the AP position or resign – contrary to her own deposition testimony. *See* Response, p. 24; *see also* Defendant's MSJ, p. 8.
[18] *See* Response, p. 22-24.

Further, for the first time in her Response, Nixon argues that her hostile work environment claim is supported by the newly alleged claim that her AP office was subpar.[19] Nixon's allegations are not encapsulated in either her First or Second Charge, nor are they included in her complaint, ultimately depriving HISD of notice of these allegations in which Nixon rests her hostile work environment claim.[20] Additionally, despite discovery requests,[21] Nixon failed to produce Exhibit 5 documenting the condition of her AP office.[22] Nixon's attempt to use inadmissible evidence to corroborate her declaration is impermissible to oppose summary judgment.[23] Even in the event that the Court determines that such evidence is admissible, it does not support her hostile work environment claim because the condition of Nixon's office was not so intolerable that a reasonable employee would have felt compelled to resign.[24] Ultimately, Nixon admits that she voluntarily resigned because she did not like her AP salary and later because her FMLA leave was exhausted — not because of the condition of her office.[25]

---

[19] *Id.* at p. 27.
[20] *Id*. Exs. C, D; Defendant's MSJ, Exhibit A, *Nixon Dep Ex. 11*.
[21] *See* Ex.1, Plaintiff's Responses to Defendant's First Requests for Production No. 14.
[22] *See* Response, Ex. K, Ex. 5.
[23] *See* Fed. R. Civ. P. 56; *see also Tatum v. Southern Company Services, Inc.,* 392 F. Supp. 689, 696 (E.D.Tex. Aug. 7, 2018) (holding that an affidavit used to oppose a motion for summary judgment must use facts that would be admissible in evidence). Federal Rule of Civil Procedure 37(c) disallows the use of evidence in a trial or to support a motion if the evidence was not produced in discovery.
[24] *See Baird v. Dept. of the Interior,* 2016 WL 80629 at *4 (E.D. La. Jan. 7, 2016) (holding that moving an employee to a "dirty, smelly" cubicle was not evidence enough of retaliation or a hostile work environment).
[25] *See* Defendant's MSJ, p. 8, nn. 42, 44, p. 12 n. 67.

**C. Nixon Presents No Evidence to Rebut HISD's Legitimate Non-Discriminatory Non-Retaliatory Reason for Failure to Promote Her**

In her Response, Nixon states that she should have received the promotion because she and Hurta, her former supervisor, subjectively believe she was more qualified for the Senior Manager position.[26] But, neither Nixon's opinions nor Hurta's beliefs are sufficient to raise a genuine issue of material fact in the face of the contrary and overwhelming evidence in this case.[27]

The evidence is clear that Verrett believed Tatarskaja was the better qualified candidate given her recent campus based experience, proven data-driven results, the recommendation from a Senior Manager, a glowing recommendation from Tatarskaja's supervisor, the opportunity to obtain a new perspective and high ratings by all five members of the interview panel.[28] In her Response, Nixon discusses her educational background and work experience, but provides no summary judgment evidence to rebut these legitimate non-discriminatory and non-retaliatory reasons.[29] Additionally, Verrett testified that if he wanted to keep the status quo and not put in place the leadership necessary to grow and develop SPED, Nixon could have been a

---

[26] *See* Response, p. 9-10, Ex. A, ¶ 4. *See Tyler v. Cedar Hill Indep. Sch. Dist.,* 426 F. App'x 306, 309 (5th Cir. 2011) ("self-serving affidavits, without more, will not defeat a motion for summary judgment").
[27] *See Vais Arms, Inc. v. Vais,* 383 F.3d 287, 294 (5th Cir. 2004) (holding that "self-serving statements" made in affidavits are "not sufficient to raise a genuine issue of material fact" in the face of "overwhelming evidence" to the contrary).
[28] *See* Defendant's MSJ, p. 4-5, 13-15.
[29] See Response, p. 19-20.

candidate, but that the direction of SPED required someone with Tatarskaja's new perspective and qualifications.[30]

Nixon also attempts to undermine Tatarskaja's qualifications with Hurta's statement that she had to assist Tatarskaja with her duties after she was selected for the Senior Manager position.[31] However, it is undisputed that Verrett determined Tatarskaja was clearly better qualified and hired her for the Senior Manager position based on evidence *known before and at the time of her interview*.[32] Further, although Hurta alleges the interview guides were submitted after the interview with Tatarskaja occurred, she never states the information provided in the interview guides is false.[33] Indeed, Hurta admits that Tatarskaja "got good ratings based on the interview."[34] Specifically, Hurta rated Tatarskaja the highest in nearly every category on the interview rubric and several interview panelists rated Tatarskaja highly in all categories.[35]

---

[30] *See* Defendant's MSJ, p. 3, n. 13, pp. 4-5.
[31] *See* Response, p. 10-11, Ex. J, ¶ 5.
[32] See *Harris v. Double G. Coatings, Inc.,* 114 F.3d 1184, *2, n. 5 (5th Cir.1997)(determining whether plaintiff was "clearly better qualified" for the position is based on evidence known at the time the employment decision was made); Information predating the adverse action and known to the decisionmaker at the time is a sufficient showing of a legitimate, nondiscriminatory reason for the adverse employment action. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 231, 233 (5th Cir. 2015); *see also Patrick v. Ridge,* 394 F.3d 311, 319 (5th Cir.2004). .
[33] Response, Hurta's Decl. ¶ 5. Additionally, see *Orthopedic & Sports Injury Clinic v. Wang Labs.*, Inc., 922 F.2d 220, 224 (5th Cir. 1991). "[U]nsupported ... affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.
[34] *See* Response, p. 20-21, Ex. J, ¶ 5
[35] *See* Defendant's MSJ, p. 13-14.

Nixon also attempts to use Hurta's declaration to argue that HISD deviated from its interview "protocols" for the Senior Manager position.[36] First, the choice not to follow non-mandatory guidelines is not evidence that Nixon's race was a motivating factor in deciding not to promote her to Senior Manager.[37] Further, Hurta states, "Nixon told me she felt she was being discriminated against," but never states what Nixon specifically said to her.[38] Hurta's vague and conclusory declaration does not state that Nixon complained to her of any race discrimination or elaborate on any facts of Nixon's alleged complaint.[39] Hurta's declaration does not state that Verrett said that there were too many black women in leadership in SPED,[40] and the inadmissible Recording Transcript[41] in which Nixon relies on does not show that Verrett made such a statement.[42] Verrett adamantly denies stating that there are too many black women in leadership in SPED.[43] Indeed, it is undisputed Verrett promoted an African American female into SPED leadership.[44] Thus, because Nixon and Hurta's conclusions and speculations supporting her Title VII race discrimination and failure

---

[36] *See* Response, p. 10, Ex. J, ¶ 4.
[37] Defendant's MSJ, p. 5 n. 24, Ex. E, *Hilliard Decl.* ¶ 12; *see Taylor v. Peerless Industries Inc.,* 322 Fed. Appx. 355, 367 (5th Cir. 2009) (Employer's written progressive disciplinary policy was, according to its own terms, not mandatory, so that employer's failure to follow the four steps listed in the policy was not evidence that race was a motivating factor in termination of African-American sales representative, in violation of Title VII).
[38] *See* Response, pp. 8-10, Ex. J, ¶ 7.
[39] *Id.*
[40] *See* Response, pp. 8-9, Ex. J, ¶ 6.
[41] *See* Defendant's Objections and Motion to Strike Certain Summary Judgment Evidence, pp. 2-3.
[42] *See* Defendant's Objections and Motion to Strike Certain Summary Judgment Evidence, p.3, nn. 11-13; Defendant has moved to strike this inadmissible transcript.
[43] *See* Defendant's MSJ, p. 4, n. 17
[44] *Id.* at p. 4, n. 18.

to promote claims are contrary to the evidence in this case, summary judgment is warranted.

**D. Nixon Correctly Stipulates that Her Title VI and § 1983 Claims should be Dismissed**

In her Response, Nixon "stipulates that Title VI and violations of the First and Fourteenth Amendments under U.S.C. § 1983 should be dismissed" on two occasions.[45] Yet, she then argues that she can meet the prima facie burden under both Title VI and § 1983.[46]

Regardless of Plaintiff's muddled position, there is no genuine issue of material fact as it relates to her Title VI claims.[47] Further, on pages 29 and 30 of her Response, Nixon appears to argue that HISD is liable as a municipality under § 1983.[48] Yet, Nixon fails to cite any legal authority to support her § 1983 claim, nor does she provide even a scintilla of evidence to support her subjective belief that HISD's Board of Trustees adopted a policy or custom that was a "moving force" in depriving Nixon of her Constitutional rights.[49] Therefore, the Court should grant summary judgment on Nixon's Title VI and § 1983.

---

[45] *See* Response, p. 5, n. 1; p. 29, n. 3.
[46] *See* Response, pp. 7-8, 19, 29-30.
[47] *See supra*, Defendant's Reply, pp. 3-5; *see* Defendant's MSJ, p. 6, nn. 31, 33, 34; *id. at* p.8, nn. 40-42p. 2, n. 5; p. 9, n. 51; p. 10, n. 53.
[48] *See* Response, p. 7; pp. 29-30.
[49] *See Stokes v. Dal. Cnty. Juvenile Dept.,* 509 Fed. Appx. 319, 323-24 (5th Cir. 2013) (summary judgment cannot be avoided with "some metaphysical doubt about the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.").

### E. Nixon attempts to Manufacture a Fact Issue regarding her FMLA Interference and Retaliation Claim using Inadmissible Evidence Based on Hearsay and Conjecture

There is no genuine issue of material fact as it relates to whether Nixon was entitled to FMLA leave because Nixon has failed to present *any* evidence showing her FMLA leave was not exhausted, except for her own subjective beliefs.[50] Nixon's declaration testimony alleges that ADP, a third party who handles leave requests, told Nixon that she had not exhausted her FMLA.[51] Yet, Nixon provides no communications or documentation from ADP corroborating ADP's analysis.[52] The uncontroverted evidence in this case shows that Nixon did indeed exhaust her FMLA leave.[53] Nixon's mere disagreement of the evidence she produced without anything further is not enough to create a genuine issue of material fact.[54]

Nixon further attempts to bolster her FMLA claims with hearsay relating to Kimbal Urrutia and Julia Dimmitt's out-of-court statements.[55] Although Nixon alludes to emails between Urrutia and Dimmitt regarding alleged discrimination and FMLA interference, Nixon has failed to produce these emails and instead relies solely on hearsay as summary judgment evidence.[56] Nixon's evidence is also conflicting

---

[50] *See* Defendant's MSJ, p. 7-9, nn.40, 47; *see* Response, p. 28-29, Exhibit K.
[51] *See* Response, p. 28, Ex. K, ¶ 19.
[52] *See State Farm Fire & Cas. Co. v. Delta Beverage Grp. Inc.*, 401 Fed.Appx. 955, 959 (5th Cir. 2010) ("an affidavit presenting self-serving factual allegations" without corroborating evidence does not defeat summary judgment.).
[53] *See* Defendant's MSJ, p.9 n.47-48, p. 15-17 n. 84.
[54] *See LeMaire v. Louisiana Dept. of Transp. and Development*, 480 F.3d 383, 391 (5th Cir. 2007) ("Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext.")
[55] *See* Response, p. 28-29, Ex. K, ¶ 20.
[56] *See* Response, p. 28-29, Ex. K, ¶ 20.

with the facts she alleges in her Response. Nixon initially claims that *she* reached out to Julia Dimmitt who responded to her that she was just "sour grapes" and that Verrett could not have discriminated against her on the basis of race and sex because he is also African American.[57] But, Nixon's sworn testimony forecloses her allegations. Nixon testified that Kimbal Urrutia allegedly spoke with Julia Dimmitt and relayed the inadmissible hearsay information to her.[58]

Moreover, Nixon admits that she was never written-up for her tardiness or absences.[59] Again, Nixon uses her self-serving declaration to falsely allege that Graves "offered no accommodations during [her] time at Lamar High School" and that Graves "did not feel she should have to accommodate [her] son's needs regardless of [her] leave being protected by FMLA."[60] Even if Graves made the statement (she did not), Nixon's conjecture flies in the face of the uncontroverted evidence in this case that Graves consistently allowed Nixon to come into work late and leave work early to accommodate her son, despite exhausting her leave.[61] As such, summary judgment is proper as it relates to Nixon's FMLA claims.

---

[57] *See* Response, p. 13.
[58] *See* Defendant's MSJ, Ex. A, *Nixon Dep.* 145:3-146:4.
[59] *See* Defendant's MSJ, p. 8, n. 40.
[60] *See* Response, pp.29, Ex. K, ¶¶ 21, 22. Additionally, Nixon argues that she discussed the terms of her intermittent FMLA with Graves during their initial interview. *Id.* at ¶ 7. However, Nixon did not tell Graves that she was on intermittent FMLA until after Graves approached Nixon about her repeated absences and tardiness. *See* Defendant's MSJ, p. 7, n. 36.
[61] *See* Defendant's MSJ, p. 7-8, n. 40.

## III. CONCLUSION

To carry her burden, Nixon was required to "produce substantial evidence of pretext" regarding HISD's reasons for its employment actions.[62] Nixon's subjective belief that discrimination and retaliation occurred, based on nothing but her own speculation and flawed inferences and Hurta's opinions are insufficient to show pretext.[63] Where, as here, the evidence presented by Nixon in opposition to summary judgment is only colorable or is not significantly probative if at all, summary judgment should be granted.

Based on the foregoing, HISD respectfully requests a complete summary judgment be granted, all of Nixon's claims be dismissed with prejudice, and HISD be granted any other relief to which it is entitled.

---

[62] *See Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001). Nixon can only achieve this rebuttal if she shows the proffered reason is "false or unworthy of credence." *Id*. An "explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Id*. Because the burden is on Nixon to demonstrate pretext, the Court cannot assume she could show pretext at trial. *See id*.; *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 146 (2000) ("It is not enough . . . to disbelieve the employer, the factfinder must believe the plaintiff's explanation of intentional discrimination.").

[63] *See Ellini v. Ameriprise Fin., Inc*., 881 F.Supp.2d 813, 824 (S.D. Tex. 2012) (Ellison, J.).

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**MOTION FOR COMPLETE SUMMARY JUDGMENT**             **PAGE 12**

| Dated: March 8, 2022 |    */s/ Ruthie N. White* |
|---|---|
| | Ruthie N. White |
| | State Bar of Texas No. 00798580 |
| | S.D. Tex. No. 21052 |
| | SPENCER FANE LLP |
| | 3040 Post Oak Blvd., Suite 1300 |
| | Houston, Texas 77056 |
| | Telephone: (713) 552-1234 |
| | Facsimile: (713) 963-0859 |
| | Email: rwhite@spencerfane.com |
| | |
| | **ATTORNEY-IN-CHARGE FOR DEFENDANT** |

**OF COUNSEL:**
Rachael I. Thomson
Texas Bar No. 24118555
S.D. Tex. No. 3601042
SPENCER FANE LLP
3040 Post Oak Blvd., Suite 1300
Houston, Texas 77056
Telephone: (713) 552-1234
Facsimile: (713) 963-0859
Email: rthomson@spencerfane.com

## CERTIFICATE OF SERVICE

    I hereby certify that on March 8, 2022 the foregoing Reply was filed with the clerk of the Court of the United States District Court for the Southern District of Texas using the CM/ECF system pursuant to the Court's electronic filing requirements, which constitutes service of the filed documents on all parties of record.

                                                */s/ Ruthie N. White*
                                                Ruthie N. White